UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GEORGE MICHAELIDIS, ALEXANDER
MICHAELIDIS, and LAKE PRESPA, LTD.,

                      Plaintiffs,

      v.                                              **DECISION AND ORDER**
                                                                08-CV-805S
DONNA BERRY and BRIAN C. DAVIS,

                      Defendants.
_____

## I. INTRODUCTION

Plaintiffs George and Alexander Michaelidis, and Lake Prespa, Ltd. commenced this civil rights action by filing a Complaint in the District Court for the Western District of New York. (Docket No. 1.) Therein, they allege that Defendants Donna Berry and Brian C. Davis violated their civil rights to make and enforce contracts in violation of 42 U.S.C. § 1981, freely associate in violation of 42 U.S.C. § 1983, and due process in violation of state and local law. Plaintiffs also allege that Defendants conspired to interfere with their civil rights in violation of 42 U.S.C. § 1985. Plaintiffs finally allege that Defendants discriminated against them on the basis of race in violation of New York State Human Rights Law ("NYHRL"), New York Executive Law §§ 291(2), 296(2), 296(2-a) and 296(6). Presently before this Court is Defendants' Motion for Summary Judgment seeking dismissal of the Complaint in its entirety.[1] (Docket No. 37.) Plaintiffs oppose the motion.[2]

---

[1] In support of their Motion for Summary Judgment, Defendants filed the Affidavit of Charles J. Schneider, with Exhibits; the Affidavit of Mary Kathryn Schneider; a Statement of Undisputed Facts; the Affidavit of Timothy A. Ball, Esq., with Exhibits; a Memorandum of Law; and the Reply Affidavit of Timothy A. Ball, Esq. (Docket Nos. 37, 38, 39, 49.)

[2] In opposition to Defendants' motion, Plaintiffs filed a Memorandum of Law; the Affidavit of George Michaelidis; the Affidavit of Alexander Michaelidis; and Objections to Defendants' Statement of Undisputed Facts. (Docket No. 44.)

1

For the reasons stated below, Defendants' motion is granted.

## II. BACKGROUND

**A.    Facts**

Plaintiff Alexander Michaelidis ("Alexander") is the sole owner of Lake Prespa, Ltd., a closely held New York corporation, and the son of co-plaintiff George Michaelidis ("George").  (Complaint ("Comp."), Docket No. 1, ¶¶ 4, 5.)  Defendant Donna Berry was, at all relevant times, a district police chief with the Buffalo Police Department.  (Id. ¶ 7.)  Defendant Brian C. Davis was, at all relevant times, the Ellicott District Representative on the City of Buffalo's Common Council.  (Id. ¶ 8.)

This matter arises out of Alexander's leasing of space at 439 Delaware Avenue in the City of Buffalo.  (Statement of Undisputed Facts ("Defs.' Stmt."), Docket No. 37, ¶ 1.)  On August 30, 2003 Alexander entered into a leasing agreement with 427 Delaware Holdings, LLC ("Delaware Holdings"), a limited liability company owned in part, but operated and managed exclusively, by Gregory Paul Koessler and Charles J. Schneider.  (Id. ¶ 4.)  Pursuant to this leasing agreement, Alexander's lease was to run from September 1, 2003 to August 30, 2008, with an option to renew.  (Id. ¶ 3.)  Alexander and Delaware Holdings entered the lease agreement with the understanding that a restaurant/lounge business would be opened at the leased location.  (Id. ¶¶ 1, 5.)  Alexander did indeed open a restaurant and lounge, known as Prespa, in April 2004, with financial support from his father, George.  (Id. ¶¶ 6, 9.)

On August 16, 2005, Delaware Holdings, through its managers Koessler and

Schneider, executed a Lease Amendment with Alexander. This Amendment expanded the leased space from 2,400 to 2,705.83 square feet, prohibited patrons from entering common areas in the back of the building, required removal of any accumulated debris, and made the rear exit to the building an emergency exit. (Defs.' Stmt. ¶ 8.) The Amendment also provided for default in the event Prespa's patrons caused a nuisance or otherwise acted unruly or indecently, though Plaintiffs contend that this was not one of the reasons for which the amendment became necessary. (Id.; Plaintiffs' Objections to Defendants' Statement of Undisputed Facts ("Pls.' Stmt."). Docket No. 44, ¶ 9.)

Starting in summer 2007, Alexander, as a result of falling profits, hired Sean M. Spurlock, an African American, as an independent contractor to promote Prespa and improve its business. (See Defs.' Stmt. ¶ 12.) Owing to Mr. Spurlock's efforts, revenues did increase. (Comp. ¶ 31.) At the same time, Prespa's clientele changed from predominantly Caucasian, to mostly African-American. (¶ 32.) Also during this time, Defendant Davis' office began receiving anonymous complaints regarding Prespa. (Defs.' Stmt. ¶ 14.) In addition, local members of the community allegedly heard rumors of drug use on Prespa's premises, leading Schneider's wife, Mary Kathryn Schneider, who operated a photography studio owned by Delaware Holdings, to contact the Buffalo Police Department. (Affidavit of Mary Kathryn Schneider ("Schneider Aff."), Docket No. 37, ¶¶ 5, 6.) Ms. Schneider was put in contact with district police chief, and defendant, Donna Berry. (Id. ¶ 7.) Ms. Schneider would go on to contact Defendant Berry at least six more times regarding Prespa. (Id.) In addition, Ms. Schneider also contacted Defendant Davis to further express her fears about the effect Prespa was having on the neighborhood, including the discovery of liquor store receipts near Prespa, and the parking of cars so as

to block Prespa's rear exit. (Id. ¶¶ 8, 9.)

In August 2007 George met with Defendant Davis at the latter's request. Also in attendance was Defendant Berry. (Affidavit of George Michaelidis ("George Aff."), Docket No. 44, ¶¶ 18, 19.) During that meeting, Defendants asserted that Spurlock, Prespa's promoter, was a criminal engaging in the illegal sale of drugs. (Id. ¶ 19.) Defendants told George that Spurlock should be removed from any activities relating to Prespa. (Id.) In response to these allegations, George asked Defendants to provide him with Spurlock's arrest record or other evidence of his illegal activities. (Id. ¶ 20.) Defendants failed to do so, despite George's repeated attempts to get that information. (Id. ¶ 21.) The only documentation received by Plaintiffs relating to Spurlock was a letter sent by Defendant Davis on October 16, 2007, which stated that his office had received "numerous, anonymous complaints regarding alleged nuisance activity" at Prespa. (Defs.' Stmt. ¶ 19.)

On September 27, 2007 the police closed Prespa's for one evening for operating without a live music license. (Id. ¶ 18.) Plaintiffs did not have the requisite license, but were able to acquire it within 24 hours. (Pls.' Stmt. ¶ 18.) However, after this incident, Plaintiffs never again had a live band on their premises. (Id.)

On April 11, 2008, Delaware Holdings received notice from the State of New York Division of Alcoholic Beverage Control that charged Plaintiffs with selling alcohol not purchased from a registered dealer and for permitting Spurlock to act as an owner or operator of Prespa. (Id. ¶ 24; Pls.' Stmt. ¶ 24.) Plaintiffs' license was ultimately not suspended. (Pls.' Stmt. ¶ 20.) During the same time period, Alexander met with Schneider and was informed that Spurlock had to be terminated and removed from the premises. (Affidavit of Alexander Michaelidis ("Michaelidis Aff."), Docket No. 44, ¶ 35.) Schneider

explained that he did not want to be hassled by the police and Defendant Davis. (Id.)

On May 15, 2008, Delaware Holdings informed Alexander that his lease would not be renewed. The landlords' stated reason for non-renewal was the receipt of notices of insurance cancellations, late rent payments, dissatisfaction with the bar business, and doubts regarding future plans for the site. (Deposition of Gregory Paul Koessler ("Koessler Dep."), Docket No. 38, 67:16 - 68:5.) Schneider specifically disliked what Prespa had evolved into over the course of its tenancy, referring to the late payment of bills and the incident involving the New York Liquor Authority. (Id. at 68:19 - 69:4; 69:13-23.) Plaintiffs, by contrast, allege that Defendants' actions led Schneider and Koessler not to renew the lease.

Following the decision not to renew the lease, Plaintiffs explored alternative business possibilities excluding Spurlock, but Plaintiffs' former landlords refused to reconsider. (See Comp. ¶¶ 68, 69.) Although Schneider originally said that no new bar or restaurant would be put in Prespa's place, following Plaintiffs' departure in July 2008, their former landlords did exactly that. (Plaintiffs' Memorandum of Law in Opposition to the Motion for Summary Judgment ("Pls.' Mem."), Docket No. 44, 7.)

**B.	Procedural History**

Plaintiffs filed a Complaint in the Western District of New York on October 31, 2008. (Docket No. 1.) Defendants filed an Answer thereto on January 23, 2009. (Docket No. 2.) This case was referred to the Honorable H. Kenneth Schroeder, Jr., United States Magistrate Judge, for all non-dispositive and procedural matters on January 27, 2009. (Docket No. 4.) Following various extensions and mediation efforts, Defendants filed the instant Motion for Summary Judgment on October 28, 2010. (Docket No. 37.) Briefing on

this motion concluded on January 28, 2011, at which time this Court took this matter under advisement without oral argument

### III.  DISCUSSION AND ANALYSIS

**A.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed.2d 142 (1970).  Summary judgment is proper "only when reasonable minds could not differ as to the import of evidence." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.  Plaintiffs' 42 U.S.C. § 1981 Claim**

§ 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges,

terms, and conditions of a contractual relationship." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 224 (2d Cir. 2004); Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 477, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006) (observing that Congress, in 1991, amended § 1981 to encompass race discrimination in the performance of contracts). To establish a § 1981 claim, a plaintiff must demonstrate (1) that he is a member of racial minority; (2) that there was an intent to discriminate on the basis of race by the defendants; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. See Brown v. City of Oneonta, N.Y., 221 F.3d 329, 339 (2d Cir. 2000).

Plaintiffs argue that Defendants Berry and Davis interfered with Plaintiffs' right to make and enforce contracts with Delaware Holdings on the basis of Spurlock's race and the race of the customers he brought to Prespa. Plaintiff's further argue that there is no evidence that Spurlock engaged in criminal activities. Despite this fact, Defendants are alleged to have informed others, including Schneider's wife, that Spurlock was a criminal. This prevented Plaintiffs from renewing their lease or opening a new business. Defendants respond that Plaintiffs have offered nothing more than conclusory allegations that Defendants' discriminated on the basis of race, that there is no factual proof that any measures taken were the result of racial animus towards African Americans, and that the uncontroverted evidence shows that Defendants had no contact with Plaintiffs' landlords.

Because this Court finds that Plaintiffs' have not satisfied the second element, showing a discriminatory intent, this Court need not further consider the remaining

elements.³ In evaluating whether there was an intent to discriminate on the basis of race, courts apply the familiar burden-shifting framework articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010); Rowe Entm't, Inc. v. William Morris Agency, Inc., 167 Fed. Appx. 227, 229 (2d Cir. 2005). The burden-shifting test first requires that the plaintiff establish a *prima facie* case of discrimination. If the plaintiff meets this initial burden, a rebuttable presumption of discrimination arises, and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). If the defendant succeeds in making this showing, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed.2d 407 (1993)). Assuming that the defendant meets its burden at the second stage, the burden returns to the plaintiff to prove that the defendant's discrimination was intentional.

In the present case, Plaintiffs fail to make out even a *prima facie* case of

---

³Neither party seriously challenges that, although Plaintiffs are white, they could still satisfy the first element on the theory that a plaintiff may bring a § 1981 claim on the basis of racial animus directed towards a third party. Lieberman v. Fine, Olin & Anderman, P.C., No. 00 CIV. 6533(JGK), 2002 WL 142198, at *3 n.1 (Jan. 31, 2002) (citing DeMatteis v. Eastman Kodak Co., 511 F.2d 306, *modified on other grounds*, 520 F.2d 409 (2d Cir. 1975)); Cox v. Onondaga County Sherrif's Dep't, No. 5:08-CV-00387, 2009 WL 910046, at *4 (N.D.N.Y. Apr. 2, 2009) (noting that Second Circuit has held that whites punished for attempting to vindicate rights of minorities have standing to sue); see also Jowers v. DME Interactive Holdings, Inc., No. 00Civ.4735(LTS)(KNF), 2003 WL 230739, at *3 n.1 (S.D.N.Y. 2003) (discussing viability of § 1981 claim can by white persons alleged to have been victims of discrimination due to animosity directed towards member of minority race).

discrimination. Meeting the initial burden of showing a *prima facie* case requires a plaintiff to identify circumstances giving rise to an inference of discrimination. See Better Env't v. ITT Hartford Ins. Group, 96 F. Supp. 2d 162, 169-70 (N.D.N.Y. 2000). Plaintiffs fail for two reasons. First, Plaintiffs fail to show how, practically, Defendants actually influenced Plaintiffs' landowners into not renewing the lease or in not agreeing to a new venture. Second, Plaintiffs fail to show that Defendants had the requisite intent.

"In order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate 'some affirmative link to causally connect the actor with the discriminatory action.'" Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000) (quoting Allen v. Denver Pub. Sch. Bd., 928 F.2d 978, 983 (10th Cir. 1991)). The deposition testimony of Koessler and Schneider's affidavit make clear that neither had contact with either Defendant. (Koessler Dep. 54:2-13; Schneider Aff. ¶¶ 23, 24.) Plaintiffs' themselves concede that "Schneider may not have had direct contact with the Defendants in this matter," and rely on the fact that Schneider's wife did have contact with Defendants, and must have influenced her husband, who then influenced his co-landlord. However, it was Ms. Schneider who *initiated* contact with the police and who went on to repeatedly contact Defendant Berry, as well as share her concerns with Defendant Davis. That Ms. Schneider first contacted Defendants, and continued to contact them, does not support an inference that Defendants sought to influence her in such a way as to negatively affect Plaintiffs.

Plaintiffs only other ground on which to allege that Defendants influenced Plaintiffs' landlords is that Alexander allegedly met with Schneider and that during this meeting Schneider said he did not want to be hassled by "them," and identified them as "the police

9

and Mr. Davis." (Alexander Aff. ¶ 35.) There is no further clarification as to what kind of hassling Schneider was subjected to, especially in light of the fact that there appears to have been no actual contact between him and Defendants. Further, testimony from both managing landlords shows that the actual reasons why Plaintiffs' lease was not renewed were tardy rent payments, failure to keep insurance policies, and concerns over investigations by the New York State Division of Alcoholic Beverage Control. Without more, Plaintiffs cannot show the necessary causal connection between Defendants' and the landlords' actions.

However, even assuming that Schneider had been contacted by Defendants, Plaintiffs still need to establish that Defendants were acting out of a discriminatory motive. In considering a plaintiff's § 1981 claim, "[t]he court must examine the entire record to determine if plaintiffs meet their ultimate burden of persuading the fact-finder of a central element of a 1981 claim: namely, that defendants intentionally discriminated against them on the basis of their race." Lizardo v. Denny's, Inc., 270 F.3d 94, 103 (2d Cir. 2001). Plaintiffs have submitted testimony showing that Ms. Schneider stated that there was concern about Prespa's predominantly African-American clientele and that she and her husband were treated like slumlords. (Plaintiffs' Memorandum of Law in Opposition to the Motion for Summary Judgment, Docket No. 44, 11.) But this shows, at most, that Plaintiffs' landlords had a discriminatory motive. However, neither Schneider nor Koessler are parties to the present action, and Ms. Schneider's comment reveals nothing concerning Defendant Berry or Davis' intent.

As to the actual defendants in this case, the record only reflects that they met with George and identified Spurlock as a criminal and drug dealer, whose involvement in

Prespa's affairs had to end.  This, in itself, does not show that Defendants discriminated on the basis of race.  Even assuming that Defendants did not provide George with evidence of Spurlock's criminal character, as he requested, Defendants are not shown to thereby harbor racist intentions.  If, as Plaintiffs allege, Defendants failed to provide incriminating evidence, this only demonstrates that they either lacked such evidence or were mistaken about it in the first place.  It does not show that either of them meant to discriminate against Spurlock because he was an African American.  See Lizardo, 270 F.3d at 102 ("Although mistreatment by defendants is not irrelevant in assessing the strength of plaintiffs' circumstantial evidence of race-based animus, it is certainly not sufficient to establish it.").  Similarly, the mere fact that Spurlock brought in a predominantly African-American customer-base does not mean that Defendants were discriminating against Prespa's customers on the basis of race.

Given this, Plaintiffs' claim fails at the first stage, and thus it is not necessary for Defendants to provide further reasons explaining why they may have discouraged interaction with Spurlock.  See Rowe Entm't, Inc., 167 Fed. Appx. at 229 ("As to the § 1981 claims against all defendants, appellants have put forth no facts on which a reasonable juror could conclude that racial discrimination interfered with a contractual relationship.").[4] Even if this Court were to follow Plaintiffs' reasoning that the allegations concerning Spurlock's criminal background were pretextual, Plaintiffs "ha[ve] not offered any evidence

---

[4]The Court notes that, in reviewing the record, Plaintiffs suggest various other grounds for discrimination.  For example, one affidavit states that "one or both Defendants informed the police and targeted Prespa for more detailed observation then [sic] other similar bar/restaurants.  (Alexander Aff. ¶ 24.)  However, these brief deviations from a record otherwise barren of evidence showing Defendants acting on the basis of race, are left unexplored in Plaintiffs' briefs, and this Court will not further expand or speculate on arguments Plaintiffs should, themselves, have raised.

that the [defendants'] justifications, even if pretextual served as a pretext for [race] discrimination." Roge v. NYP Holdings, Inc., 257 F.3d 164, 170 (2d Cir. 2001); Lizardo, 270 F.3d at 104 (noting that even if defendants exaggerated or lied about plaintiffs' behavior, the record did not otherwise support a finding that this was to mask racial discrimination).

Accordingly, Defendants' Motion for Summary Judgment as to Plaintiffs' § 1981 claim will be granted.

**C.     Plaintiffs' 42 U.S.C. § 1983 Claim**

Civil liability is imposed under § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. § 1983, on its own, does not provide a source of substantive rights. Rather, § 1983 is a method of vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n. 3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)). A plaintiff making a § 1983 claim must satisfy two elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges. Annis v. county of Westchester, 136 F.3d 239, 245 (2d Cir. 1998). "The Supreme Court has recognized a right of association with two distinct components- an individual's right to associate with others in intimate relationships and a right to associate with others for purposes of engaging in activities traditionally protected by the First Amendment, such as speech and other expressive conduct." Adler v. Pataki, 185 F.3d 35, 42 (2d Cir. 1999)

(citing Roberts v. U.S. Jaycess, 468 U.S. 609, 617-18, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984).

Plaintiffs' claim clearly falls into the second category. Plaintiffs allege that they were discriminated against in their business involvement with Spurlock and with their African-American patrons, on the basis of race. However, Plaintiffs again fail to show that Defendants' actions were motivated by racial considerations. Plaintiffs argue that Defendants and their landlords told them to end Spurlock's involvement. Plaintiffs further argue that Defendants stated that they would never permit Spurlock to purchase Prespa, and that Spurlock was bringing in undesirable elements, including "gangsters" and rappers. As before, this is insufficient to show an intent to discriminate based on race. This Court first notes that, in making this argument, Plaintiffs cite liberally to their Complaint. A complaint is not admissible evidence for defeating a motion for summary judgment. See Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996). A review of the affidavits Plaintiffs offer in support of their opposition shows only that Schneider "was concerned about black clientele." (George Aff. ¶ 34.) However, "§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999). Plaintiffs do not submit anything revealing similar sentiments were harbored by Defendants.

Accordingly, Defendants' Motion for Summary Judgment as to Plaintiffs' § 1983 claim will be granted.

**D.     Plaintiffs' Due Process Claim**

"In order to sustain an action for deprivation of property without due process of law, a plaintiff must first identify a property right, second show that the state has deprived him

of *that* right, and third show that the deprivation was effected without due process." Local 342, Long Island Pub. Serv. Emps, UMD, ILA, AFL-CIO v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation and quotation marks omitted, emphasis in original). Plaintiffs' Complaint alleges that police closed Prespa the night of September 27, 2007 for operating without a live music license. However, it is undisputed that Prespa was playing live music that night. Further, it is also undisputed that Prespa lacked the necessary license for such an event. (Defs.' Stmt. ¶ 18.) Nor is it disputed that Plaintiffs thereafter were able to acquire a live music license. (Pls.' Stmt. ¶ 18.) Consequently, Plaintiffs' due process claim as to the September 27, 2007 incident cannot be maintained absent any allegation that Plaintiffs were improperly denied something to which they had a property right.

Plaintiffs also argue, relying on their Complaint, that Defendant Berry visited Prespa in Spring of 2008 and stated that she had received complaints about Spurlock's presence at Prespa, that Spurlock had brought "a certain element" to the business, and that he should not be working there. Further, Plaintiffs allege that Defendant Berry informed George that, had George been present that night, she would not have shut down the restaurant. From this, Plaintiffs assert that it is clear "that the Defendant Berry had in fact admitted to George Michaelidis that she had ordered the restaurant shut down and would not have done so if George Michaelidis was present but because Sean Spurlock was present she shut it down based on the race of Mr. Spurlock and the element of predominantly African Americans into the restaurant." (Pls.' Mem. 12-13.) This Court has difficulty following Plaintiffs' reasoning but concludes that Plaintiffs have inadequately supported their due process claim. Even assuming the truth of Plaintiffs' assertions,

14

Plaintiffs have not shown that they were denied a license before, or after, the evening of September 27, 2007.

Accordingly, Defendants' Motion for Summary Judgment as to Plaintiffs' due process claim will be granted.

### E.  Plaintiffs' 42 U.S.C. § 1985 Claim

Pursuant to § 1985(3) a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of the citizens of the United States." Adams v. Smith, No. 08:07-CV-0452 (LEK/RFT), 2007 WL 2323435, at *2 (N.D.N.Y. 2007) (quoting Fox v. City of New York, No. 03 Civ. 2268, 2004 WL 856299, at *9 (S.D.N.Y. Apr. 20, 2004)).

Plaintiffs rely on previously discussed evidence to make their § 1985 claim. A claim under § 1985(3) will only be successful where a plaintiff shows a causal link between the alleged discriminatory conduct and the plaintiff's membership in a protected class. See Pabon v. New York City Transit Auth., 703 F. Supp. 2d 188, 202 (E.D.N.Y. 2010). Again, Plaintiffs' evidence is insufficient for a reasonable juror to conclude that Defendants discriminated on the basis of race.

Accordingly, Defendants' Motion for Summary Judgment as to Plaintiffs' § 1985 claim will be granted.

### F.  Plaintiffs' NYHRL Claim

Having found that summary judgment should be granted in favor of Defendants' as

to Plaintiffs' federal claims, this Court will decline to exercise jurisdiction over Plaintiffs' state law claims. See Marcus v. AT&T Corp., 138 F.2d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 37) as to Plaintiffs' federal law claims is GRANTED.

FURTHER, that this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claim, which is hereby dismissed under 28 U.S.C. § 1367(c)(3).

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:  December 12, 2011
         Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            Chief Judge
                                            United States District Court